**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DAMIEN RIVERO, | 3:10-cv-00557-RCJ (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| E.K. MCDANIEL, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Summary Judgment. (Doc. # 14.)[1] Defendants opposed (Doc. # 16) and Plaintiff filed a reply and supplemental reply (Doc. # 17 and Doc. # 18). After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Damien Rivero (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 8).) The events giving rise to this action took place at Ely State Prison (ESP). (*Id.* at 1.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Correctional Officers Richard Rimington and Dennis Homan. (*Id.* at 2, Doc. # 7.)

On screening, the court determined that Plaintiff states a single colorable claim for retaliation under the First Amendment. (Doc. # 7.) Specifically, Plaintiff alleges that

---

[1] Refers to the court's docket number.

Defendants have conducted repeated searches of his cell in retaliation for the actions and grievances Plaintiff previously filed against them. (Doc. # 8 at 4-5.) He further alleges that during the cell searches, Defendants have confiscated legal papers, damaged legal papers, and left legal papers on the floor after walking on them. (*Id*.)

Plaintiff now moves for summary judgment with respect to this claim. (Doc. # 14.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

2

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

Plaintiff has the burden of proof at trial with respect to his claim, and is tasked with producing evidence that establishes the *absence* of a genuine issue of fact as to each issue material to his case. *See C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (internal citations omitted).

A plaintiff may state a claim for violation of his or her First Amendment rights due to retaliation under 42 U.S.C. § 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

The inmate must (1) submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action, and (2) demonstrate that his or her First Amendment rights were actually chilled by the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). The Ninth Circuit has recognized that prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation, and "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citation omitted).

Plaintiff states in his declaration that he has filed several prison grievances and lawsuits against prison officials at ESP, including Defendants. (Doc. # 14 at 12-13.) He goes on to state

1 that prison officials at ESP have retaliated against him by conducting searches of his cell, where
2 they "mess with" his legal documents. (*Id.*) Specifically, he asserts that Defendant Rimington
3 conducted a search of his cell in January 2010, where he tore up Plaintiff's legal papers, and
4 spread his legal documents on the floor and stepped on them. (*Id.* at 14.) He also contends that
5 Defendants Rimington and Homan searched his cell on May 18, 2010, June 18 and 24, 2010,
6 September 9, 2010, and December 9, 2010, and again tore up and put some of his legal papers
7 in the trash. (*Id.* at 14-16.) He states that as a result of this harassment, he was precluded from
8 litigating a successful lawsuit in state court. (*Id.* at 16.)

9 Plaintiff produces various documents in support of his motion, including Defendants'
10 responses to Plaintiff's interrogatories. (Doc. # 14 at 82-90.) Defendants' responses confirm
11 that they conducted searches of Plaintiff's cell in 2010, and that legal documents were in
12 Plaintiff's cell, but the Defendants did not read the legal papers when conducting the searches.
13 (*Id.* (responses to Pl.'s Interrogatory Nos. 2-3).) Defendants also confirm that when they
14 searched Plaintiff's cell in 2010, they threw paper from Plaintiff's cell into the trash can. (*Id.*
15 (responses to Pl.'s Interrogatory No. 6).) Defendants admit that Plaintiff has filed grievances
16 and lawsuits against them in the past. (*Id.* (response to Pl.'s Interrogatory Nos. 9-10).) They
17 further admit that they knew Plaintiff was filing grievances against them in 2010, when they
18 were conducting searches of Plaintiff's cell. (*Id.* (response to Pl.'s Interrogatory No. 11).)

19 Importantly, when Plaintiff asked Defendants about the relationship between his filing
20 grievances against them and the searches performed in his cell, Defendants responded that the
21 fact that Plaintiff's cell is periodically searched had nothing to do with the grievances filed by
22 Plaintiff. (Doc. # 14 at 82-90 (responses to Pl.'s Interrogatory No. 12).) Instead, Defendants
23 assert that Plaintiff's cell is searched periodically because he is classified as a High Risk
24 Prisoner (HRP), and because cell searches are done routinely pursuant to NDOC policy. (*Id.*)

25 The court finds that Plaintiff did submit circumstantial evidence that tends to establish
26 a link between the exercise of his constitutional rights and the alleged retaliatory action, *e.g.*,
27 he filed grievances against Defendants in 2010 and they engaged in the searches of his cell
28 where he asserts they destroyed his legal papers during the same time frame. (*See* Doc. # 14 at

5

12-16, 92-90.)[2] *See Sorrano's Gasco, Inc.*, 874 F.2d at 1316 (finding that timing of the events may constitute circumstantial evidence of retaliatory intent). However, the evidence produced by Plaintiff himself raises a genuine issue as to a material fact; namely, Defendants' interrogatory responses expressly state that the cell searches were *not* related to Plaintiff's filing of grievances, but were a result of NDOC policy and Plaintiff's HRP status. (Doc. # 14 at 82-90 (responses to Pl.'s Interrogatory No. 12).)

Moreover, the court finds that Plaintiff fails to establish the absence of a genuine issue of material fact with respect to whether Plaintiff's First Amendment rights were actually chilled by the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. While Plaintiff states in a conclusory fashion that Defendants' alleged retaliatory conduct prevented him from litigating a successful lawsuit in state court (Doc. # 14 at 16), the evidence he provides to support his claim is not conclusive on this issue.

Plaintiff relies on Exhibits B and B-1 to support his claim that his First Amendment rights were chilled as a result of the alleged retaliatory conduct. (Doc. # 14 at 16.) Exhibits B and B-1 (Doc. # 14 at 73-79) are Plaintiff's motion for voluntary dismissal (*id.* at 73-74) and a court order granting Plaintiff's motion for voluntary dismissal in Case Number CV-0504048, filed in the Seventh Judicial District Court of the State of Nevada, in and for the County of White Pine (*id.* at 76-79).

First, the court notes that Plaintiff has omitted pages three (3) and four (4) of the court's order. (*See* Doc. # 14 at 76-69.) Nonetheless, the order sets forth the procedural history of Plaintiff's case, and indicates the case was proceeding when Plaintiff filed his motion to

---

[2] Defendants' take the position in their opposition that they dispute Plaintiff's assertion that he filed kites, grievances and lawsuits against them. (Doc. # 16 at 2.) To the extent they are asserting they Plaintiff did not file grievances against them, this is seemingly contradicted by their interrogatory responses. (*See* Doc. # 14 at 82-90 (responses to Pl.'s Interrogatory No. 11) (responding affirmatively to Plaintiff's interrogatory asking if in 2010 while they were conducting searches of Plaintiff's cell, they acknowledge that Plaintiff was filing grievances against them).) Similarly, while Defendants dispute the fact that they periodically searched Plaintiff's cell in their opposition, this is also belied by their discovery responses. (*See* Doc. # 14 at 82-90 ( responses to Pl.'s Interrogatory No. 2) (responding affirmatively to Plaintiff's interrogatory asking whether they conducted searches of his cell in 2010).) (*See also* responses to Pl.'s Interrogatory No. 3.)

1 voluntarily dismiss the action. (Doc. # 14 at 78.) Plaintiff's motion for voluntary dismissal was
2 predicated upon his claim that he no longer had the legal documents necessary to litigate his
3 case as a result of a cell search that resulted in destruction of the documents. (*Id.*) The order
4 granting dismissal of the case specifically states that the defendants in the state court action
5 did not oppose the dismissal of the action, but *did* oppose the *facts* set forth in the motion to
6 voluntarily dismiss the case. (*Id.*) Because the defendants did not oppose the dismissal, the
7 court granted Plaintiff's motion. (*Id.*)

8       This evidence itself establishes that a dispute exists with respect to whether or not
9 Plaintiff's First Amendment rights were actually chilled as a result of the retaliatory action; a
10 fact material to Plaintiff's case. The state court order establishes that the court granted
11 Plaintiff's request to voluntarily dismiss the action because the defendants did not oppose it,
12 not because the court made a finding that Plaintiff *was* deprived of the legal materials he
13 needed to prosecute his case as a result of a cell search perpetrated by Defendants Rimington
14 and Homan.

15       Moreover, Defendants are correct that the interrogatory responses on which Plaintiff
16 relies only indicate that Defendants threw *some sort of paper* in the trash after searching his
17 cell, but do *not* establish that they in fact threw away his *legal* papers. (*See* Doc. # 14 at 82-90
18 (responses to Pl.'s Interrogatory No. 6, which states, "On the year 2010 during [sic] you
19 conducted searches into Plaintiff's cell did you [sic] threw *any* paper from Plaintiff's cell within
20 the trash can?) (emphasis added).)

21       In sum, the court finds that Plaintiff has failed to meet his burden of establishing the
22 absence of a genuine issue of fact as to each issue material to his case. Accordingly, Plaintiff's
23 Motion for Summary Judgment (Doc. # 14) should be denied.

27 ///

7

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. # 14).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: December 21, 2011.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE